IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRÄGER MEDICAL GMBH, DRAEGER MEDICAL SYSTEMS, INC., and DRAEGER MEDICAL INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIED HEALTHCARE PRODUCTS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) Civ. No. 13-1656-SLR ) ) ) ) ) |

**MEMORANDUM**

At Wilmington this 24th day of March, 2014, having reviewed the submissions, both written and oral, offered by the parties in connection with plaintiffs' motion for the entry of a preliminary injunction, the court offers the following analysis:[1]

1. **Background.** The patented technology in this case involves carbon dioxide ($CO_2$) absorbers for rebreathing systems, such as anesthesia machines. The $CO_2$ absorbers at issue are disposable canisters which are filled with a mixture of chemicals called "soda lime" to filter out $CO_2$ in order, e.g., to keep anesthetized patients oxygenated.

2. Plaintiffs manufacture and sell medical and safety equipment, including a line of anesthesia equipment and related products. A subset of the anesthesia-related products includes "Drägersorb® CLIC" disposable canisters, which canisters are

---

[1]The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue in this district is appropriate pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

attached to anesthesia machines via the "Dräger CLIC" adapter. When a CLIC canister is used up, it is removed from the CLIC adapter and a new CLIC canister is inserted into the CLIC adapter in its place. The Dräger CLIC system offers various benefits to clinicians: (a) it is cleaner and more convenient to remove and replace a CLIC canister than it is to replace loose fill soda lime; (b) it allows clinicians to avoid contact with soda lime and soda lime dust; (c) it allows more complete utilization of soda lime, thus reducing costs; and (d) it allows clinicians to change the canister at any time, even during surgery.

3. Defendant sells what it calls "Dräger Style" soda lime disposable canisters, the "Dräger Style" Litholyme and Carbolime products (the "accused products"). The accused products are specifically designed to work with the Dräger CLIC adapter, as a replacement for Drägersorb® CLIC canisters. Plaintiffs and defendant are the only two companies selling canisters for use with the Dräger CLIC adapter. Plaintiffs allege that, by the summer of 2013, defendant was taking business away from plaintiffs by undercutting their prices, thus causing a loss of business, ongoing price erosion, and a threat to the Dräger brand.

4. United States Patent No. 8,286,633 ("the '633 patent") issued to Dräger Medical GmbH on October 16, 2012. Entitled "Carbon Dioxide Absorber for a Rebreathing System," the basic object of the '633 patent is "to improve a carbon dioxide absorber such that it can be connected to the connection head of a rebreathing system in a simple manner." ('633 patent, col. 1:51-53) Consistent with the inventive thrust of the patent, the carbon dioxide absorber disclosed in claim 1 comprises:

a connection head at the rebreathing system, said connection head including

    a pivotable mount;
    an absorber housing;
    a guide plate on a front side of said absorber housing, said guide plate being pushed into said pivotable mount of said connection head;
    guide plate gas ducts arranged concentrically at said guide plate;
    connection head gas ducts provided in said connection head and with a design corresponding to said guide plate gas ducts, said guide plate gas ducts for connection to said connection head gas ducts;
    guide grooves between said guide plate and said absorber housing for connecting said guide plate to said mount;
    centering pins pointing in a direction of said absorber housing from said connection head; and
    centering means in one or more of said guide plate and said absorber housing, said centering means for meshing with said centering pins from said connection head;
    said pivotable mount being pivotable between a first position and a second position, said first position arranging said pivotable mount adjacent said connection head, said second position arranging said pivotable mount spaced from said connection head and said centering pins.

('633 patent, col. 5:62-6:21)

    5. **Standard of Review.** A preliminary injunction is "an extraordinary remedy that should only be granted in limited circumstances." *Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 501 (D. Del. 2012). To be successful, a movant at bar must demonstrate: (a) a reasonable likelihood of success on the merits; (b) the prospect of irreparable harm in the absence of the injunction; (c) that this harm would exceed harm to the opposing party; and (d) that granting the injunction is in the public interest. *See Abbott Labs. v. Sandoz, Inc..* 544 F.3d 1341, 1344 (Fed. Cir. 2008). "If either or both of the fundamental requirements - likelihood of success on the merits and probability of irreparable harm if relief is not granted - are absent, an injunction cannot issue." *Enzo Life Sciences, Inc. v. Adipogen Corp.*, Civ. No. 11-88, 2011 WL 2559610, at *2 (D. Del. June 28, 2011).

6. **Likelihood of Success.** Defendant does not dispute that the accused products were designed (and are marketed as such) to work with the Dräger CLIC adapter, as a replacement for Drägersorb® CLIC canisters. Nevertheless, defendant argues that plaintiffs are not likely to succeed on the merits because they have not demonstrated that the accused products likely infringe the '633 patent, nor have they demonstrated that the infringement claim will likely withstand defendant's challenges to the validity and enforceability of the '633 patent.

7. As disclosed above, the '633 patent is a combination patent which includes a connection head[2] which is part of a rebreathing system, and a housing[3] to be inserted and removed from the connection head of the rebreathing system. Defendant does not sell this combination; it sells the housing in the form of the replacement $CO_2$ absorbers. According to the record, plaintiffs are the only distributors of the entire combination.

8. The question before the court is whether plaintiffs' sale of the patented combination implicates the doctrines of patent exhaustion and/or of permissible repair. The court concludes that application of the doctrine of permissible repair is appropriate under the facts of this case.[4] "Originating in the principle of exhaustion of the patent

---

[2]With a pivotable mount and centering pins.

[3]With a guide plate, guide grooves and centering means.

[4]The doctrine of patent exhaustion arguably applies to the facts as well, under the reasoning of *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 625 (2008). "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Id.* at 625. In order to determine whether exhaustion has been triggered by the sale of a patented item, one must determine whether "the item sufficiently embodies the patent - even if it does not completely practice the patent - such that its only and intended use is to be finished under the terms of the patent." *Id.* at 628. Here, the accused products

right after first sale, the general rule is that 'while the ownership of a patented article does not include the right to create a substantially new article, it does include the right to preserve the useful life of the original article.'" *Surfco Hawaii v. Fin Control Systems Pty, Ltd.*, 264 F.3d 1062, 1065 (Fed. Cir. 2001) (quoting *Jazz Photo Corp. v. Int'l Trade Comm'n,* 264 F.3d 1094, 1102 (Fed. Cir. 2001)). Once a patented product is purchased, the customer has an implied license to use it, including the right to repair the patented article or purchase replacement parts from others. *See, e.g., Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961). As explained by the Supreme Court in *Aro*,

> [n]o element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be.

*Id.* at 345.

9. In *Sage Products, Inc. v. Devon Indus., Inc.*, 45 F.3d 1575 (Fed. Cir. 1995), the Federal Circuit was asked to address the question of whether the patentee's competitor could be held liable for contributory infringement of a patented system for disposing of sharp metal instruments, when the competitor's customers (hospitals) replaced the unpatented disposable inner containers used in the system with containers supplied by the competitor. The Federal Circuit, citing to its prior opinions in *Everpure, Inc. v. Cuno, Inc.* 875 F.2d 300, 303 (Fed. Cir. 1989), and *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 885-86 (Fed. Cir. 1986), found that the doctrine of

---

(replacement $CO_2$ absorbers) were designed specifically to function with the other elements of the patented combination, and embody the essential features of the patented invention. (*See, e.g.,* '633 patent: Abstract; col. 1:51-53; col. 5:62-64)

5

permissible repair applied to the facts at issue:

> Under similar circumstances, *Everpure* and *Porter* held that users replacing exhausted elements did not directly infringe the patented combination . . . . We think the same result is compelled here. Sage wants to hold Devon liable for contributory and induced infringement for supplying a replaceable, unpatented element which Sage itself sells and recommends replacing. It thus seeks to keep for itself a market in parts which are intended to be periodically replaced - this is no more than an attempt to expand patent rights to an unpatented product. "It is at least difficult to accept the notion that one who purchases a disposable [element of a product] under instructions to replace it [periodically] is guilty of infringement when the buyer does precisely that." *Everpure*, 875 F.2d at 303 . . . .

*Sage*, 45 F.3d at 1579.

10. The circumstances at bar are analogous to those examined in *Sage*. Clearly plaintiffs sell the patented combination intending that their customers remove and discard spent $CO_2$ absorbers. Like the removable inner containers of the *Sage* disposal system, the $CO_2$ absorbers are unpatented elements of the '633 combination. Because the doctrine of repair "encompasses any repair that is necessary for the 'maintenance of the "use of the whole" of the patented combination through replacement of a spent, unpatented element,'" *id.* at 1578 (citing *Aro*, 365 U.S. at 346), the court concludes that plaintiffs have not surmounted defendant's challenge under the doctrine of permissible repair and, thus, have not carried their burden of demonstrating infringement.[5]

11. **Balance of Harms.** The court recognizes that plaintiffs have identified the types of harm that traditionally have qualified as not easily compensable by money damages - price erosion and threatening the Dräger brand. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Price erosion, loss of

---

[5]In the absence of infringement, the court declines to address defendant's invalidity arguments.

goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)). In contrast to these assertions is the admonition of the Supreme Court in *Aro*,[6] that plaintiffs may not claim a patent monopoly over an unpatented element of a combination patent, which element is intended to be replaced on a regular basis, and the harm that would come to defendant for this lost business opportunity. The record demonstrates that the balance of harms does not weigh in favor of plaintiffs.

12. **Conclusion.** On the record presented, the court denies plaintiffs' motion for a preliminary injunction. An order shall issue.

_____
United States District Judge

---

[6]365 U.S. at 345.