IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRÄGER MEDICAL GMBH, a German Corporation; DRAEGER MEDICAL SYSTEMS, INC. and DRAEGER MEDICAL INC., Delaware corporations,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIED HEALTHCARE PRODUCTS, INC., a Delaware corporation,<br><br>Defendant. | Civ. No. 13-1656-SLR |

**MEMORANDUM**

At Wilmington this day of March, 2015, having reviewed defendant Allied Healthcare Products, Inc.'s ("defendant") motion for summary judgment (D.I. 93), and the papers filed in connection therewith; the court issues its decision based on the following reasoning:

1. **Background.** On October 4, 2013, plaintiffs Dräger Medical GMBH, Draeger Medical Systems, Inc., and Draeger Medical, Inc. (collectively, "plaintiffs") filed the instant action against defendant alleging infringement of United States Patent Nos. 8,286,633 ("the '633 patent") and 7,487,776 ("the '776 patent") (collectively, "the patents-in-suit"). (D.I. 1) Defendant answered the complaint on October 28, 2013 and counterclaimed for non-infringement and invalidity of the patents-in-suit. (D.I. 22) On November 21, 2013, plaintiffs answered the counterclaims. (D.I. 44) The court denied plaintiffs' motion for preliminary injunction on March 24, 2014. (D.I. 87; D.I. 88) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. **Standard.** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

3. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of

2

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

4. **Analysis.** The '633 patent,[1] titled "Carbon Dioxide Absorber for a Rebreathing System," issued to Dräger Medical GmbH on October 16, 2012. The basic object of the '633 patent is "to improve a carbon dioxide absorber such that it can be connected to the connection head of a rebreathing system in a simple manner." ('633 patent, col. 1:51-53) Consistent with the inventive thrust of the patent, the carbon dioxide absorber disclosed in claim 1 comprises:

> a connection head at the rebreathing system, said connection head including a pivotable mount;
> an absorber housing;
> a guide plate on a front side of said absorber housing, said guide plate being pushed into said pivotable mount of said connection head;
> guide plate gas ducts arranged concentrically at said guide plate;
> connection head gas ducts provided in said connection head and with a design corresponding to said guide plate gas ducts, said guide plate gas ducts for connection to said connection head gas ducts;
> guide grooves between said guide plate and said absorber housing for connecting said guide plate to said mount;
> centering pins pointing in a direction of said absorber housing from said connection head; and

---

[1] The parties have stipulated that the analysis regarding permissible repair and patent exhaustion as to the '633 patent applies equally to the '776 patent. (D.I. 91; D.I. 94 at 1)

3

> centering means in one or more of said guide plate and said absorber housing, said centering means for meshing with said centering pins from said connection head;
> said pivotable mount being pivotable between a first position and a second position, said first position arranging said pivotable mount adjacent said connection head, said second position arranging said pivotable mount spaced from said connection head and said centering pins.

('633 patent, col. 5:62-6:21) The '633 patent is a combination patent which includes a connection head[2] ("adapter") which is part of a rebreathing system, and a housing[3] ("canister") to be inserted and removed from the adapter of the rebreathing system. Defendant does not sell this combination; it sells the housing in the form of the replacement canisters.

5. [T]he doctrine of patent exhaustion . . . limit[s] the patent rights that survive the initial authorized sale of a patented item." *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 621 (2008). "[T]he right to vend is exhausted by a single, unconditional sale, the article sold being thereby carried outside the monopoly of the patent law and rendered free of every restriction which the vendor may attempt to put upon it." *Id.* at 626 (citing *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 516 (1917). In the case at bar, the combination patent is made up of the adapter and the canister. With regard to the sales of the patented combination, plaintiffs explain that the adapters are provided to customers (1) at the "initial capital sale" of a rebreathing system or (2) at no cost with a commitment to purchase an inventory of canisters. (D.I. 97 at 9) In either scenario, plaintiffs' sales are in reality for

---

[2] With a pivotable mount and centering pins.
[3] With a guide plate, guide grooves and centering means.

4

the patented combination, i.e., an adaptor with at least one canister for insertion into a rebreathing system, which sale exhausts the patent.

6. Alternatively, "the traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies the patent—even if it does not completely practice the patent—such that its only and intended use is to be finished under the terms of the patent." *Quanta*, 553 U.S. at 628. While the adapter and the canister each contain specific claimed features, each is specifically designed to function with the other element of the patented combination. Neither component of the combination has any "reasonable non-infringing uses," as exemplified by plaintiffs' business model — efforts to sell multi-year contracts for canisters. The sale of either component is intended to persuade the customer to use the combination. The court concludes that the patent is exhausted.[4]

7. "Originating in the principle of exhaustion of the patent right after first sale, the general rule of the doctrine of permissible repair is that 'while the ownership of a patented article does not include the right to create a substantially new article, it does include the right to preserve the useful life of the original article.'" *Surfco Hawaii v. Fin Control Systems Pty, Ltd.*, 264 F.3d 1062, 1065 (Fed. Cir. 2001) (quoting *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001)). Once a patented product is purchased, the customer has an implied license to use it, including the right to repair the patented article or purchase replacement parts from others. *See, e.g., Aro*

---

[4] The parties advance the same general arguments that were presented at the preliminary injunction stage of the case at bar. Indeed, the court's analysis of this issue remains largely the same and concludes that the patent is exhausted.

5

*Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961). As explained by the Supreme Court in *Aro*,

> [n]o element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be.

*Id.* at 345.

8. In *Sage Products, Inc. v. Devon Indus., Inc.*, 45 F.3d 1575 (Fed. Cir. 1995), the Federal Circuit was asked to address the question of whether the patentee's competitor could be held liable for contributory infringement of a patented system for disposing of sharp metal instruments, when the competitor's customers (hospitals) replaced the unpatented disposable inner containers used in the system with containers supplied by the competitor. The Federal Circuit, citing to its prior opinions in *Everpure, Inc. v. Cuno, Inc.* 875 F.2d 300, 303 (Fed. Cir. 1989), and *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 885-86 (Fed. Cir. 1986), found that the doctrine of permissible repair applied to the facts at issue:

> Under similar circumstances, *Everpure* and *Porter* held that users replacing exhausted elements did not directly infringe the patented combination . . . . We think the same result is compelled here. Sage wants to hold Devon liable for contributory and induced infringement for supplying a replaceable, unpatented element which Sage itself sells and recommends replacing. It thus seeks to keep for itself a market in parts which are intended to be periodically replaced - this is no more than an attempt to expand patent rights to an unpatented product. "It is at least difficult to accept the notion that one who purchases a disposable [element of a product] under instructions to replace it [periodically] is guilty of infringement when the buyer does precisely that." *Everpure*, 875 F.2d at 303 . . . .

*Sage*, 45 F.3d at 1579.

6

9. Having determined that plaintiffs' patent rights are exhausted,[5] the circumstances at bar are analogous to those examined in *Sage*. There is no doubt that plaintiffs sell the patented combination intending that their customers remove and discard spent canisters. Like the removable inner containers of the *Sage* disposal system, the canisters are unpatented elements of the '633 combination. The doctrine of repair "encompasses any repair that is necessary for the 'maintenance of the "use of the whole" of the patented combination through replacement of a spent, unpatented element.'" *Id.* at 1578 (citing *Aro*, 365 U.S. at 346). The court concludes that the replacement of the canister is permissible repair.[6]

10. **Conclusion.** The court recognizes that the parties rely on different paradigms for their analyses, plaintiffs identifying *Quanta* and *Canon* as more analogous to the facts of record, and defendant identifying *Aro* and *Sage* as the better reasoned in the context of the facts of record. Consistent with the decision denying plaintiffs' request for injunctive relief (D.I. 89), the court concludes that the facts of record are more appropriately analyzed with reference to the doctrine of permissible

---

[5] Plaintiffs argue that their patent rights are not exhausted; therefore, the doctrine of permissible repair cannot apply. The court notes in this regard that neither the Supreme Court in *Aro* nor the Federal Circuit in *Sage* analyzed the facts at issue under the doctrine of patent exhaustion. In other words, it is not at all clear to the court that the issue of patent exhaustion must be specifically addressed before reaching the doctrine of permissible repair.

[6] Plaintiffs' reliance on *Canon, Inc. v. GCC Int'l, Ltd.*, 263 Fed. Appx. 57 (Fed. Cir. 2008), to argue that the canister "dominates the monetization and valuation of the patented technology," does not change the court's analysis. Reviewing a grant of a preliminary injunction, the Federal Circuit in *Canon* called into question the district court's claim construction and did "not . . . reach[] its final conclusion as to the matter." *Id.* at 61. The Court noted that "the concept of proportionality [of the value of the replaceable part] is pertinent, though less so in the case of readily replaceable parts." *Id.*

repair. Therefore, for the aforementioned reasons, defendant's motion for summary judgment of non-infringement is granted. An appropriate order shall issue.

/s/ Sue L. Robinson
United States District Judge